## OYER AND TERMINER.

### NEW YORK, JULY, 1800.

*The People*
vs. } RAPE.
*Richard D. Croucher.*

Present—Honourable *Egbert Benson*, Justice.
         Honourable *Richard Varick*, Mayor.
         Honourable *Richard Harison*, Recorder.
         *Selah Strong*, Alderman.

*Cadwallader D. Colden*, Attorney General.

*Brockholst Livingston,*
*Washington Morton,* } Counsel for the Prisoner.

On an indictment for a rape, there is no definite period fixed by law to infer puberty; it depends more upon the constitution and habits of body of the party, than upon age.

The facts of this case were as follows. The prisoner was indicted in the usual form, with committing a rape on the body of Margaret Miller, a young girl of 13 years of age, the daughter of Mrs. Stockhaver, whom he, in a few weeks after, married.

The story told by the girl was as follows: " Mr. Croucher came to my mother's, Mrs. Stockhaver's, I don't know how long ago, to sell some stockings: he used to come every day. One night he asked my mamma, if she would let me go and scrub his room for him, at

Mr. Ring's, where he lived, for he said there was a lady and gentleman coming to look at some linens he had. She said, at first, she did not know whether I might or not, but she at last consented. He said he wanted me to go that night, so that I might be there very early in the morning; and that I might sleep with a servant girl in the house, if I would go. So I went with him to Mr. Ring's house, in Greenwich-street, almost by Mr. Rhinelander's brew-house. He told me to go up stairs to a room in the third story, and he would follow; it was about 9 o'clock: I heard the clock strike 8 some time before.

"I went up, and he followed, and took me through a dark entry into a room in the third story. He told me the servant girl would come and sleep with me, and then he locked the door, and took out the key, and went down. After a little time, he came back and locked the door inside: then he took and undressed me, and put me on the bed; and then he undressed himself, and came to bed to me. He used force," &c.

It appeared farther by the testimony, that the prisoner was married, or at least came to live with Mrs. Stockhaver, in two or three days after; and that they often quarrelled, and were in habits of discord; the prisoner at one time calling Margaret a whore in the presence of the mother, and accusing her of having lain with him by consent.

It was contended by Mr. Livingston, on the part of the prisoner, that if any connection had taken place between them, it was by consent. He observed, "if any thing improper had passed between them, I am inclined to

N'W YORK,
July 1800.

The People
v.
Croucher.

Query?

believe that it has been with her consent. The passions may be as warm in a girl of her age as in one of more advanced years, and with very little enticement she may have consented to become his mistress. If so, the law acquits him ; for where consent is given after ten years of age, a rape cannot exist. But it is said her youth renders it impossible she should have been a lewd girl. Who is acquainted with the dissolute morals of our city, and does not know that females are to be found living in a state of open prostitution at the early ages of 12 and 13 years ? I am not defending the conduct of the prisoner ; I will suppose he is guilty of having most shamefully seduced and ruined the girl ; but the moment common seduction is put upon the same footing, and confounded with rape, consequences the most dreadful are to be apprehended.

"The transaction took place in March, and we hear nothing of it in that month, nor until the middle of June. This delay is not satisfactorily accounted for. If you admit of the excuse now given, that this concealment was owing to dread of the prisoner, you put an excuse into the mouth of every witness who may choose to appear, and commence a similar prosecution from personal motives or revenge," &c.

*Colden*, Attorney General. It is admitted, that if the child is to be believed, that you must convict the prisoner. But the counsel say she is unworthy of credit, because no witnesses are brought to support her character. What does this require of us? That we should bring witnesses to prove that this infant was not lustful in her cradle. We have relied upon the natural pre-

sumption that a child of her age could not have any wan-ton desires. If there are extraordinary instances of so early a birth of the passions, and this child is one of them, why has not the prisoner brought forth witnesses to prove her so ?

*But two months or more elapsed before she complained.* In answer to this objection, let it be first recollected, that during all this time she was living with the prisoner. Let his conduct to her be remembered : that he was forever beating her, turning her out of doors—driving her from her bed—always loading her with the most reproachful language. By such conduct he excited her fears to that degree, that, as the witness herself says, she could not cast her eyes upon him without feeling terrified.

It is said by the counsel, that a jury cannot be justifiable in pronouncing a verdict against the prisoner in such

---

\* General Sessions, Sept. Term, 1823. Levi Washburn was indicted for an assault and battery, upon Mary-Ann Gilbert, (who was about fifteen years of age,) on the 11th of July, 1823. She swore that the defendant assaulted, and had a connection with her, in the suburbs of the city, against her consent.

It was contended, on the part of the defendant, that the story told by Mary-Ann was improbable, and that the connection was with her consent.

The court had great doubts whether the passions had arrived to that maturity to authorize a supposition of a connection, of that nature, with her consent; she being very small of her age, and had few marks of puberty.

The District Attorney pressed it in his argument to the jury; and the court observed to them, there was 'no definite time—it depended more upon the constitution and habits of body, than upon the age of the party.

The jury, however, returned a verdict in favour of the defendant.

a case, unless the testimony of the party ravished is cor-
roborated by other witnesses.' Let us take this to be the
law, and inquire how it applies to this case.

When you know that the prisoner has boasted that he
made this child a whore—when we have heard his con-
fession that he has had her in his bed—when you know
that he has told of the difficulty with which he obtained
his infernal gratification, can you say that you have no
corroborative testimony?

*Benson*, Justice. The prisoner at the bar stands in-
dicted for the commission of a rape upon Margaret Mil-
ler. This crime, from the very nature of it, is apt to excite
indignation in every breast; and when perpetrated on an
infant of this age, that indignation becomes greater. It
is, however, your duty to divest yourselves of all warmth
and all prejudice, and to exercise your judgment upon
this case in the most temperate manner. If it shall ap-
pear to you that the girl, young and unexperienced as
she may be, yielded her consent, it is no rape, and you
must pronounce the prisoner *not guilty*, however crimi-
nal in the eye of morality his conduct may be. The
whole question will, I think, depend upon the credit which
is to be given to her: if she is to be believed, there can-
not be a doubt as to the prisoner's guilt. It is evident
that there has been a connection between them, and the
single question that remains is, whether it was against
her consent. It is a circumstance that deserves your con-
sideration, that a very long time elapsed after the com-
mission of the fact, before she made any disclosure, and
this, unless it can be satisfactorily accounted for, must
undoubtedly detract much from her credibility. She at-
tributed it to the terror which originally possessed her

mind, and which she says continued as long as he fre-
quented the house of the person by whom she was adopt-
ed.

The court cannot with propriety charge you, gentle-
men, whether you ought, or ought not, to give credit to
the principal witness: that is certainly your province.

If, upon the whole, you shall think her worthy of credi-
bility, you must say the prisoner at the bar is guilty; if
otherwise, you are bound to acquit him.

The jury immediately returned a verdict of *guilty.*